# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 7, 2017        Decided October 6, 2017

No. 16-5329

BREAD FOR THE CITY,
APPELLANT

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-01591)

*Bryan M. Killian* argued the cause for appellant. With him on the briefs were *Thomas R. Lotterman* and *Clara Kollm*.

*Jaynie Lilley*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief was *Mark B. Stern*, Attorney.

Before: ROGERS and MILLETT, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*:  This is an appeal from the order of the district court  dismissing a complaint for failure to state a cause of action.  *Bread for the City, Inc. v. United States Dep't of Agriculture*, 211 F. Supp. 3d 327 (D.D.C. 2016).  The complaint, filed by Bread for the City, Inc., alleged that the Department of Agriculture spent hundreds of millions of dollars less than the law required on a program to provide food for the needy.

The district court upheld the Agriculture Department's interpretation of 7 U.S.C. § 2036(a), a spending provision in The Emergency Food Assistance Program, as modified by the Agriculture Act of 2014.  Pub. L. No. 113-79, § 4027(a), 128 Stat. 649, 812.  Under the Program, the Agriculture Department purchases surplus food and then distributes it to the States.  7 U.S.C. § 2036(a)(1).  The States then distribute the food to organizations providing nutrition assistance to the needy, such as Bread for the City in the District of Columbia, which the Program treats as a State.  7 U.S.C. §§ 2012(r), 7501(3)-(4), 7502(g).

Subsection 2036(a) sets the dollar amount of surplus food the Agriculture Department must purchase each fiscal year.  Paragraph 2036(a)(1) now specifies that for fiscal years 2014 through 2018 the Department "shall purchase a dollar amount described in paragraph (2) of a variety of nutritious and useful commodities . . .."

Paragraph (2) is the portion of § 2036(a) at issue in this appeal.  It is as follows:

**(2) Amounts**
The Secretary shall use to carry out paragraph (1)—

(A) for fiscal year 2008, $190,000,000;

(B) for fiscal year 2009, $250,000,000;

(C) for each of fiscal years 2010 through 2018, the dollar amount of commodities specified in subparagraph (B) adjusted by the percentage by which the thrifty food plan has been adjusted under section 2012(u)(4) of this title between June 30, 2008, and June 30 of the immediately preceding fiscal year;

(D) for each of fiscal years 2015 through 2018, the sum obtained by adding the total dollar amount of commodities specified in subparagraph (C) and—
>    (i) for fiscal year 2015, $50,000,000;
>    (ii) for fiscal year 2016, $40,000,000;
>    (iii) for fiscal year 2017, $20,000,000; and
>    (iv) for fiscal year 2018, $15,000,000; and

(E) for fiscal year 2019 and each subsequent fiscal year, the total dollar amount of commodities specified in subparagraph (D)(iv) adjusted by the percentage by which the thrifty food plan has been adjusted under section 2012(u)(4) of this title to reflect changes between June 30, 2017, and June 30 of the immediately preceding fiscal year.

By way of example, for fiscal year 2015, the inflation adjustment in subparagraph (C) amounted to $27 million. The Agriculture Department therefore added this amount to the $250 million specified in subparagraph (B), for a total of $277 million. To this $277 million, the Department added the amount specified in clause (D)(i), $50 million, for a total of $327 million. According to the plaintiff, that was far too little. By its lights, the Department should have spent $604 million.

To get to its $604 million figure, the plaintiff engages in the following computations. Like the Agriculture Department, it begins with subparagraph (C). But unlike the Department, the plaintiff treats this provision as a stand-alone mandate, requiring the Department to spend $277 million ($250 million plus the inflation adjustment of $27 million). The plaintiff then lays this amount on the table and moves on to subparagraph (D), treating it as another separate, stand-alone spending requirement. Therefore, for fiscal year 2015, clause (D)(i) required the Department to spend $327 million ($277 million plus $50 million), in addition to the $277 million derived from subparagraph (C). The $327 million added to the $277 million comes to $604 million. That, the plaintiff claims, is what the Agriculture Department should have spent on the Program rather than the $327 million it actually spent.

It may be that a parsing machine could come up with plaintiff's $604 million number for fiscal year 2015. But what does this prove? A parsing machine might also read "Time flies like an arrow" to mean that time-flies, collectively, like an arrow, as in "fruit flies like a banana"; or that one should time the speed of flies as one would time the speed of an arrow; or that *Time* magazine has taken to flight. *See* Steven Pinker, *The Language Instinct* 209 (1994).

The most natural reading of the statutory text, however, is that subsection (D) provides a specified supplement to the expenditure amount calculated in subsection (C). Even if Bread for the City's parsing of § 2036(a)(2) were linguistically possible, it is quite implausible. For one thing, it "is far too convoluted to believe Congress intended it." *Chickasaw Nation v. United States*, 534 U.S. 84, 90 (2001). There is no explaining why Congress would use such a roundabout method of requiring such a substantial increase in spending. There is no good explanation for why Congress, after requiring the expenditure of

$277 million twice in fiscal year 2015, would tack on another $50 million, as the plaintiff claims. And there is no explanation for why Congress would retain the inflation adjustment while increasing spending during fiscal years 2015 to 2018 by hundreds of millions of dollars, amounts far exceeding any possible loss of purchasing power through inflation.

It is therefore hardly surprising that both the Senate and House drafts of the Agricultural Act of 2014 clearly provided for spending increases to the Program that were consistent with the Agriculture Department's interpretation. H.R. 2642, 113th Cong. § 4016, Engrossed Amendment Senate (July 18, 2013); H.R. 2642, 113th Cong. § 4027, Engrossed Amendment House (Sept. 28, 2013). The Conference Committee Report on the 2014 amendments, which added subparagraph (D) to § 2036(a), further confirms the Department's position. The Report states that the bill "provides an increase in funding of $50 million for fiscal year 2015, $40,000,000 for fiscal year 2016, $20,000,000 for fiscal year 2017, and $15,000,000 for fiscal year 2018"; nowhere is there even a hint that in addition to these amounts, spending would increase by an inflation-indexed $250 million in each of these fiscal years. H.R. Rep. No. 113-333, at 440 (2014) (Conf. Rep.). The Congressional Budget Office report took the same position as the Conference Report. Douglas W. Elmendorf, Cong. Budget Office, Cost Estimate: H.R. 2642, Agricultural Act of 2014 (2014). And to round things off, the explanatory statements accompanying the 2015 and 2016 appropriations bills also support the Agriculture Department's understanding of § 2036(a)(2). H.R. Rep. No. 113-468, at 50 (2014); 160 Cong. Rec. H9313 (daily ed. Dec. 11, 2014); H.R. Rep. No. 114-205, at 59 (2015); 161 Cong. Rec. H9700 (daily ed. Dec. 17, 2015).

In short, the available evidence shows that those intimately involved in determining the spending levels of the Program do not support Bread for the City's version of § 2036(a).

*Affirmed.*